## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**DANA RANEY, IV,**

     **Plaintiff,**

**vs.**                                 **Case No.  1:17cv143-MW/CAS**

**NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

     This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's Title II application for period of disability and Disability Insurance Benefits.  After careful consideration of the entire record, it is respectfully recommended that the decision of the Commissioner be affirmed.

## I. Procedural History and Facts

On January 23, 2014, Plaintiff Dana Raney, IV, filed a Title II application for disability insurance benefits (DIB) alleging disability beginning on December 24, 2013, due to Scheuermann's Kyphosis, spinal fusion, arthritis in back, numbness in extremities, inability to sit for any length of time, constant lower back pain, burning pain in upper back and into shoulders, no range of motion in back and neck, and shooting pain in both legs.  Tr. 138-45.[1]

Plaintiff's application was denied initially on March 12, 2014, and upon reconsideration on May 9, 2014.  Tr. 61.  Plaintiff requested a hearing, which was held on March 21, 2016, in Jacksonville, Florida, before Administrative Law Judge (ALJ) Gregory J. Froehlich.  Tr. 34-59.  Plaintiff, who appeared with counsel, testified and Kristin Panella, Vocational Expert appeared by telephone and testified.[2]

The ALJ issued a decision on June 8, 2016, finding Plaintiff is not disabled and not entitled to disability benefits.  Tr. 17-28.  The Appeals Council denied Plaintiff's request for review on April 26, 2017.  Tr. 1.  Thus, the decision of the ALJ became the final decision of the Commissioner and

---

[1] Citations to the transcript/administrative record contained in ECF No. 9 shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

[2] The ALJ erroneously identified the vocational expert as Maria Vargas.  Tr. 17.

is ripe for review. Accordingly, Plaintiff, represented by counsel, filed a Complaint for judicial review pursuant to 42 U.S.C. §§ 1381, et seq., and 42 U.S.C. § 405(g). *See* ECF No. 1.

**A. Hearing Testimony**

Plaintiff, age 40 at the time of the alleged onset date, testified at the hearing that his past employment was as a delivery driver involving tractor trailer and box trucks. Tr. 40. He said he had to stop delivery because the lifting became too physically demanding. Tr. 39. Plaintiff testified that he gets headaches in the back of his head and cannot move his head left, right, up, or down. Tr. 40, 51. He said he gets numbness in both hands and has constant burning from his cervical area down his right shoulder that requires him to lay down throughout the day. Tr. 41.

Plaintiff testified that he has trouble lifting overhead and cannot do many household chores like cooking and taking out the garbage, although he tries to do dishes but has back spasms. Tr. 41-42, 48. He testified that he needs help putting on his socks. Tr. 48. He can manipulate small items like buttoning a shirt, picking up a coin, and opening a jar lid, although these tasks cause a burning sensation at the base of his neck. Tr. 41-42.

He can drive but only in an emergency.[3]  Tr. 47.  He said if he does

anything too long, like sitting or standing, he gets extreme headaches in the

back of his head.  Tr. 42.  He testified he does not sleep well at night, and if

his back relaxes during the day, he may doze off.  Tr. 49.

Plaintiff testified that he is able to stand only for five minutes before

he gets back spasms and burning sensations in his back and down into his

buttocks and legs.  *Id.*  He said he alternates between standing and lying

down every fifteen minutes, and physical therapy did not work.  Tr. 43.  As

for walking, he said a doctor prescribed a walker for him to help him

balance because he gets dizzy sometimes.  *Id.*  He does not know how far

he can walk without his assistive device because he has not tried.  Tr. 51-

52.  He testified he can lift about two pounds without a lot of pain.  Tr. 51.

Plaintiff testified that everyday his neck pain, on average, was about a

seven.  Tr. 44.

As to his lower back, Plaintiff testified that he cannot twist or bend

easily.  When he showers, he makes sure someone is home.  Tr. 45.  He

said he has Scheuermann's Kyphosis[4] extending to where his surgery was

---

[3] The ALJ stated in the decision that Plaintiff drove himself from Gainesville to
Jacksonville (Tr. 20), but Plaintiff testified only that he was having a difficult day due to
"the car ride from Gainesville over here."  Tr. 41.

[4] Scheuermann's Kyphosis is exaggerated rounding of the back that typically
begins before puberty and may worsen as the child finishes growing.  *See*

and it affects his hips, buttocks, and legs with what feels like an electrical shock. Tr. 46, 49. "Harrington" rods were placed in his thoracic spine when he was age seventeen. Tr. 49, 51. Plaintiff testified he had some epidural injections and nerve blocks, but they were not working so his doctors decided not to do any more. Tr. 50-51.

The ALJ proposed a hypothetical question to the vocational expert describing a person of Plaintiff's age, education, and past work of delivery driver or sales route driver, who is limited to sedentary work with a 30-minute sit/stand option, with occasional postural climbing, balancing, stooping, kneeling, crouching, crawling, and overhead reaching, who should not have concentrated exposure to vibrations, work around mechanical parts, or at unprotected heights, and who is limited to simple tasks taking a short time to learn up to thirty days. Tr. 52-53. Under this hypothetical, the vocational expert testified that the person would not be able to perform past work as a delivery driver or sales route driver. Tr. 53.

The vocational expert testified there were other jobs that the person would be able to perform, including order clerk, DOT #209.567-014, sedentary exertion level, SVP of 2, unskilled, with approximately 20,000

---

https://www.mayoclinic.org/diseases-conditions/kyphosis/symptoms-causes/syc-20374205 (last visited February 12, 2018).

jobs in the national economy; charge account clerk, DOT #205.367-014,

sedentary exertion level, SVP of 2, unskilled, with approximately 17,000

jobs in the national economy; and document preparer, DOT #249.587-018,

sedentary exertion level, SVP of 2, unskilled, with approximately 104,000

jobs in the national economy.[5]  Tr. 53.

      The ALJ proposed a second hypothetical identical to the first, but in

which the individual also must use a hand-held assistive device to reach

the workstation.  Tr. 54.  The vocational expert testified that the person

could still do the same three representative jobs if, once the person

reached the workstation, they no longer needed the assistive device.

Tr. 55.  A third hypothetical added to the above limitation, the requirement

that the person be off task for at least 20 percent of the workday at

---

[5] DOT refers to the Dictionary of Occupational Titles (4th Ed., Rev. 1991), published by the United States Department of Labor, which is one of the examples of sources that the ALJ may rely on for job information.  *See* SSR 00-4p; 20 C.F.R. § 404.1566(d).  The ALJ may also rely on a vocational expert or other specialist.  *See* § 404.966(e).  An SVP (Specific Vocational Preparation) of 1 means "short demonstration only."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month."  *Id.*  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of 1 and 2.  SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decisions; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).

unpredictable intervals and outside normally permitted breaks. *Id.* The

vocational expert testified that such limitations would eliminate competitive

employment. The expert also opined that no more than one absence a

month would be tolerated in competitive employment. *Id.*

Counsel for Plaintiff proposed an additional hypothetical to the

vocational expert in which the person could stand for only ten minutes,

need to lie down for twenty minutes, use an assistive device practically all

the time, and lift and carry less than five pounds. Tr. 56. Under these

hypothetical facts, the vocational expert opined that these limitations would

eliminate all competitive employment. *Id.*

## II. Findings of the ALJ

In the decision issued June 8, 2016, the ALJ made the following

pertinent findings:

1.  The claimant meets the insured status requirements of the
Social Security Act through December 31, 2017. Tr. 19.

2.  The claimant has not engaged in substantial gainful activity
since December 24, 2013, the alleged onset date. *Id.*

3.  The claimant has the following severe impairments:
degenerative disc disease (DDD) of the lumbar spine with
radiculopathy, history of spinal fusion from T5-L1, and cervical DDD.
*Id.*

4.  The claimant does not have an impairment or combination of
impairments that meets or medically equals the severity of one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 20.

The ALJ found that the record does not establish that the claimant's impairments, either singly or in combination, meets or equals in severity any listed impairment, and that no treating or examining physician has mentioned findings equivalent in severity to the criteria in any listed impairment. *Id.*

5. After careful consideration of the entire record, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except with a 30-minute sit/stand option; requires the use of a hand-held assistive device to reach the work station but is not required once he is at the work station;[6] limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling; limited to occasional overhead reaching; he should not have concentrated exposure to vibrations, work around moving, mechanical parts and work at unprotected heights. Due to a variety of symptoms described, he is limited to simple tasks with little variation that take a short period of time to learn (up to and including 30 days) and able to deal with changes in a routine work setting. *Id.*

In making these findings, the ALJ noted that Plaintiff has a history of treatment for back pain, citing first the consultative examination by Sultan Ahmed, M.D., on March 3, 2014. Tr. 21. The examination revealed normal findings except for paraspinal tenderness in the lower back and limited range of motion. Tr. 21 (citing records at Tr. 247-48). Dr. Ahmed's records showed intact sensation and normal gait, but noted functional limitations for daily activities due to lower back pain and right shoulder pain. *Id.* Dr. Ahmed noted that Plaintiff does not use any assistive device for ambulation. Tr. 247.

The ALJ also discussed the March 12, 2014, visit to Marlow Hernandez, M.D., at Cano Medical Dental. Dr. Hernandez reported Plaintiff's history of spinal stenosis and Plaintiff's earlier surgery for Scheuermann's Kyphosis, but found that Plaintiff ambulated without

---

[6] The ALJ noted that the record does not indicate a walker was prescribed as an assistive device, but "viewing the evidence most favorably to the claimant," the ALJ included a limitation to use of a hand-held assistive device to and from the work station in the RFC. Tr. 26.

difficulty.  Tr. 22 (citing records at Tr. 283).  The ALJ found that a March 17, 2014, MRI of the cervical spine revealed a posterior bulge at C3-4; left parasagittal disc herniation and moderate neural foraminal narrowing and a moderate degree of central canal narrowing at C4-5; bulging annulus and mild uncovertebral joint arthropathy and mild degree of central canal narrowing and mild degree of bilateral neural foraminal narrowing at C5-6; bulging annulus and mild to moderate degree of central canal narrowing and left neural foraminal narrowing at C6-7 and bulging annulus at C7-Tl.  Tr. 22 (citing records at Tr. 270).  The ALJ also noted an MRI of the thoracic spine, which revealed unremarkable findings.  Tr. 22 (citing records at Tr. 271).  The 2014 MRI of the lumbar spine revealed a large disc herniation and facet arthropathy and osteophyte complex that might be secondary to accelerated degeneration below the fusion at L1-2; posterior disc herniation and disc tear with mild degree of central canal stenosis at L4-5 and posterior bulging annulus and large disc herniation with mild to moderate degree of central canal narrowing and moderate to severe right and moderate left neural foraminal narrowing at L5-S1 Tr. 22 (citing records at 272-73).

The ALJ cited Plaintiff's medical visits in October, November, and December to the emergency department of Memorial Hospital West, Palms Medical Group, and Shands Orthopedic Surgery, respectively, that noted the musculoskeletal exams were generally unremarkable or normal, and gait was generally normal.  Tr. 22 (citing records at Tr. 313-316, 360-62, 347-48).

A March 15, 2016, MRI of the cervical spine revealed mild to moderate diffuse cervical spondylosis.  At C4-5, there was a mild posterior broad-based spondylotic bulge with congenitally short pedicles with moderate central canal stenosis as well as prominent left-sided uncovertebral joint hypertrophic degenerative changes with left lateral recess stenosis and moderate to severe left foraminal narrowing.  The MRI showed that at C6-7, there was mild posterior broad-based annular bulge with small posterocentral disc protrusion and mild central canal stenosis and left neural foraminal narrowing. At C5-6, there was mild posterior broad-based annular disc bulge and small posterocentral disc protrusion with mild central canal stenosis. Tr. 24 (citing records at Tr. 389-90).  The March 2016 MRI of Plaintiff's lumbar spine revealed moderate degenerative disc disease scattered throughout the lumbar spine.  At L4-5, there was moderate

circumferential disc bulge with posterocentral disc protrusion and mild central canal stenosis.  At L5-S1, there was more prominent disc space narrowing and prominent circumferential disc bulge. Prominent left paracentral disc protrusion with extrusion was noted with moderate central canal stenosis.  There was also circumferential disc bulge that produced moderate bilateral neural foraminal narrowing.  Tr. 24 (citing records at Tr. 391-92).

The ALJ recognized that Plaintiff has had some degenerative changes and new findings at L5-S1, and that when reviewed in conjunction with his physical examination findings, the test results are consistent with the tenderness and reduced range of motion. However, the ALJ found that the objective findings support the physical examination limitations and are consistent with the RFC. Tr. 24 (citing records at Tr. 270-72, 356-59, 389-92).  Plaintiff's reports of how long he could stand or sit were not reported to his providers and his claims of ability to lift/carry only 2 pounds were not consistent with medical records showing intact strength.  Tr. 25.

6.  The claimant is unable to perform any past relevant work. Tr. 26.

Plaintiff's past relevant work was described as sales route driver, DOT #292.353-010, SVP of 3, medium exertion level.  *Id.*

7.  The claimant was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  *Id.*

8.  The claimant has at least a high school education and is able to communicate in English.  *Id.*

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  *Id.*

10.  Considering claimants' age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  *Id.*

Based on the RFC found by the ALJ and the testimony of the vocational expert at the hearing, the ALJ found that Plaintiff could

perform the representative jobs of order clerk, DOT #209.567-014, sedentary exertion level, SVP of 2, unskilled, with approximately 20,000 jobs in the national economy; charge account clerk, DOT #205.367-014, sedentary exertion level, SVP of 2, unskilled, with approximately 17,000 jobs in the national economy; and document preparer, DOT #249.587-018, sedentary exertion level, SVP of 2, unskilled, with approximately 104,000 jobs in the national economy. Tr. 27.

The ALJ noted that although the DOT does not specifically address a sit/stand option or the use of a hand held assistive device, the vocational expert testified at the hearing that, based on her education and experience as well as her analysis of jobs on site in the field, the representative jobs listed would allow the individual the ability of a sit/stand option. *Id.*

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 24, 2013, through the date of the decision [June 8, 2016]. *Id.*

Based on these findings, the ALJ found that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act and is therefore not entitled to disability benefits.  Tr. 28.

### III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v.

Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The

Commissioner's factual findings are conclusive if supported by substantial

evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).[7]  The Court may not decide the facts anew, reweigh the

evidence, or substitute its judgment for that of the Commissioner,

Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

entire record, consider evidence detracting from the evidence on which the

Commissioner relied, and determine the reasonableness of the factual

findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v.

Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is deferential, but

the reviewing court conducts what has been referred to as "an independent

---

[7]  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). In addition, an individual is entitled to disability insurance benefits if he is under a disability prior to the expiration of his insured status. See 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

Pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v), the Commissioner analyzes a claim in five steps:

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[8]

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If

_____

[8] Residual functional capacity is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work available in significant numbers in the national economy in light of the claimant's RFC, age, education, and work experience.  *See* Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1228-29 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.  The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ.  *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to

the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

This is so because treating physicians "are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of [the

claimant's] medical impairment(s) and may bring a unique perspective to

the medical evidence that cannot be obtained from the objective medical

findings alone or from reports of individual examinations, such as

consultative examinations or brief hospitalizations."  20 C.F.R.

§ 404.1527(c)(2).[9]  "This requires a relationship of both duration and

frequency."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating

physician must be supported by substantial evidence, Marbury v. Sullivan,

957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.

Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is

given to a treating physician's opinion and any reason for giving it no

weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at

1053.

---

[9] This provision applies to claims filed before March 27, 2017.  *See* 20 C.F.R.
§ 404.1527, "Evaluating opinion evidence for claims filed before March 27, 2017."  For
claims filed after that date, the applicable provision is section 404.1520c, "How we
consider and articulate medical opinions and prior administrative medical findings for
claims filed on or after March 27, 2017."

The ALJ may discount the treating physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory."  Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Some opinions, on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of

disability."  20 C.F.R. § 404.1527(d); *see* <u>Bell v. Bowen</u>, 796 F.2d 1350,

1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to

the Commissioner are never entitled to controlling weight or special

significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (1996) (rescinded eff.

Mar. 27, 2017).

      Although physicians' opinions about what a claimant can still do or

the claimant's restrictions are relevant evidence, such opinions are not

determinative because the ALJ has responsibility of assessing the

claimant's RFC.  A treating physician's opinion that a claimant is unable to

work and is necessarily disabled would not be entitled to any special weight

or deference.  The regulations expressly exclude such a disability opinion

from the definition of a medical opinion because it is an issue reserved to

the Commissioner and a medical source is not given "any special

significance" with respect to issues reserved to the Commissioner, such as

disability.  20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2,

at *6 (rescinded eff. Mar. 27, 2017).  In <u>Lewis</u>, the court noted "that we are

concerned here with the doctors' evaluations of [the claimant's] condition

and the medical consequences thereof, not their opinion of the legal

consequences of his condition.  Our focus is on the objective medical

findings made by each doctor and their analysis based on those medical findings."  125 F.3d at 1440.

Generally, more weight is given to the opinion of a specialist "about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(c)(2), (5)[10]; *see also* Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (noting that "[s]pecialized knowledge may be particularly important with respect to a disease . . . that is poorly understood within much of the medical community") (Benecke quoted in Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 65 n.13 (11th Cir. 2010) (unpublished)).  Although a claimant may provide a statement containing a treating physician's opinion of his remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the ALJ must make the ultimate determination of disability.  20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

### IV. Analysis

On September 18, 2017, Plaintiff was directed to file a memorandum in support of his position.  ECF No. 10.  Pursuant to a motion requesting an extension of time to file the memorandum, Plaintiff was given additional

---

[10] *See* note 9, *supra*.

time to file the memorandum.  ECF No. 12.  On November 30, 2017,

Plaintiff filed a motion for summary judgment, in lieu of a memorandum of

law, identifying six claims challenging the decision of the Administrative

Law Judge. [11]  ECF No. 13.

Plaintiff's claims comprise three basic contentions on which Plaintiff

seeks relief:

> **A.**  The ALJ erred in determining on this record that the impairments do not meet or medically equal Social Security Listing 1.04A;
>
> **B.**  The ALJ erred in considering and assigning weight to the opinions of examining, treating, and consultative medical personnel; and
>
> **C.**  The ALJ erred in framing the hypothetical question posed to the vocational expert and in failing to accurately determine whether the limitations on Plaintiff caused by his

---

[11] Although some circuits have found the summary judgment device inappropriate for deciding cases under the Social Security Act, *see, e.g.,* Igonia v. Califano, 568 F.2d 1383 (D.C. Cir. 1977), the Fifth Circuit has deemed it appropriate where the district court has conducted a full review of the record and based its judgment on a finding of substantial evidence in the record. *See* Lovett v. Schweiker, 667 F.2d 1, 2 (5th Cir. 1981).  Whether issues are presented through a motion for summary judgment or some other means, the district courts apply the well-established procedure for reviewing social security appeals by consideration of the entire administrative record. *See* Flores v. Heckler, 755 F.2d 401, 403 (5th Cir. 1985) (recognizing that evaluation of disability claim by summary judgment is not required and holding that "district courts reviewing disability determinations should not conclude their review without an appropriate opportunity for the presentation of the parties' contentions").  Regardless of the propriety or applicability of a motion for summary judgment in Social Security cases, this Court's review of the Commissioner's final decision to deny benefits under the Act, pursuant to 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence; and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act.  *See* Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

conditions would significantly erode the occupational base such
that he cannot perform even sedentary work.

*See* ECF No. 13 at 3.

## A.  Social Security Listing 1.04

Plaintiff contends that the ALJ reversibly erred at step three by failing
to properly evaluate whether Plaintiff's severe impairments of degenerative
disc disease of the lumbar spine with radiculopathy, history of spinal fusion,
and cervical degenerative disc disease meet or medically equal Social
Security listing 1.04(A)—Disorders of the Spine.

A claimant bears the burden of proving that his impairments meet or
medically equal a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1.
*See* 20 C.F.R. § 404.1520(a)(4)(iii).  The claimant must show that his
impairments meet a listing by presenting specific evidence of medical
signs, symptoms, or laboratory test results meeting all the specified
medical criteria.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  An
impairment that manifests only some of the criteria, "no matter how
severely," does not qualify.  *Id.*; *see also* Barron v. Sullivan, 924 F.2d 227,
229 (11th Cir. 1991) (same).  "To 'equal' a listing, the medical findings must
be 'at least equal in severity and duration to the listed findings.' "  Wilson,
284 F.3d at 1224.  If the claimant has been diagnosed with a condition
described in the listings, but is unable to provide medical evidence that

meets all the criteria, he may still qualify for the particular listing if there are other findings related to the impairment or impairments that are at least of equal medical significance to all the required criteria.  Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987); 20 C.F.R. § 404.1526(b).

The Supreme Court has explained:

> For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment. . . .  A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment.  SSR 83–19, at 91-92 ("[I]t is incorrect to consider whether the listing is equaled on the basis of an assessment of overall functional impairment. . . .  The functional consequences of the impairments . . . irrespective of their nature or extent, cannot justify a determination of equivalence") (emphases in original).

Zebley, 493 U.S. at 531-32 (footnotes and citations omitted).

To meet a listing, the claimant must (1) show he has been diagnosed with a condition included in the listings and (2) present specific medical findings that meet the various tests listed under the description of the applicable impairment.  Bell, 796 F.2d at 1353.  A diagnosis alone is insufficient.  20 C.F.R. § 404.1525(d) ("To meet the requirements of the

listing, you must have a medically determinable impairment(s) that satisfies all of the criteria of the listing.").

Under Listing 1.04A, a claimant is entitled to a conclusive presumption that he is disabled if he can show that his disorder of the spine results in compromise of a nerve root or the spinal cord. Listing 1.04A describes the criteria a claimant must meet to merit a conclusive presumption of disability arising out of compromise of a nerve root or the spinal cord. Listing 1.04A provides as follows:

> 1.04  Disorders of the spine (e.g., herniated nucleus pulposa, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the clauda equina) or the spinal cord.  With:
>
> A. Evidence of nerve root compression, characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting or supine);

20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.04, 1.04A.  Thus, presumptive disability at step three for Listing 1.04A requires nerve root compression resulting in limited range of motion and motor loss with muscle weakness. Plaintiff cannot meet the requirements of this provision because nothing in the medical records shows medical signs, symptoms, or laboratory tests

documenting that Plaintiff has nerve root compression or compromise of a nerve root.

The MRI scans of Plaintiff's spine in 2014 and 2016 do not note any nerve root compression or cord compression. *See* Tr. 270-73; 389-92. In the 2014 MRI, central canal narrowing and left neural foraminal narrowing in the lumbar spine were noted, and compression of the conus medullaris could not be excluded, but was not identified. Tr. 273. The 2016 MRI report notes that the cervical cord appears normal in morphology. Tr. 389. In the lumbar spine, moderate degenerative disease was scattered throughout the lumbar spine, and no compression fracture was observed. Tr. 391. No cord compression or compression of the conus medullaris was noted in the 2016 MRI. Tr. 389-92. Plaintiff is unable to show he has suffered or is expected to suffer from nerve root compression continuously for at least twelve months. *See* 20 C.F.R. § 404.1509; Radford v. Colvin, 734 F.3d 288, 294 (4th Cir. 2013).

Listing 1.04A also requires proof of atrophy, muscle weakness, and sensory or reflex loss. The record shows, however, that although Plaintiff demonstrated tenderness and reduced range of motion, he routinely had normal neurological and physical examinations. *See* Tr. 281-89, 314, 316, 347-48, 362-63, 414-18, 422, 427. In a May 29, 2015, visit to the

University of Florida Pain & Spine Center, office notes indicate that Plaintiff's gait was normal, as were his reflexes.  Tr. 418.  In August 2015, the office notes stated that Plaintiff was complaining of back pain, but his examination disclosed normal 5/5 strength in all tested muscle groups and no muscle wasting or atrophy, and that his reflexes were normal and symmetric.  Tr. 414.

Listing 1.04A also calls for proof of positive test for straight-leg raising sitting or supine.  Plaintiff cites positive straight leg raise testing, but only during examinations in August, October, November and December of 2015, and January and February of 2016.  ECF No. 13 at 5 (*see* Tr. 410, 448, 414, 436, 440, 444, 446).  This evidence of positive straight leg testing does not satisfy the duration requirement.

The ALJ was correct to determine that Plaintiff's severe impairments, either singly or in combination, do not meet or medically equal Listing 1.04A.  Although the medical record documents Plaintiff's degenerative disc disease, bulging discs, limitation on range of motion, and several instances of positive straight leg raise tests, these impairments do not meet or equal all the requirements of Listing 1.04A and, further, have not been shown to meet the duration requirement.

Plaintiff also contends that the ALJ reversibly erred by failing to discuss his rationale for finding that Plaintiff's impairments fail to meet or medically equal any listed impairment.  ECF No. 13 at 6-7.  The ALJ was never presented with argument or citations to the medical record to support a finding that Plaintiff's impairments meet or equal Listing 1.04A or any listing.  Even so, the third step of the five-step process requires the ALJ to compare the Plaintiff's medical evidence to a list of impairments that are presumed severe enough to preclude any gainful work.  *See* Zebley, 493 U.S. at 525.  If the medical evidence meets or equals a listing, a finding of disability is made.  *Id.*  However, the ALJ is not required to "mechanically recite the evidence" leading to the determination that the Plaintiff's impairments do not meet the listing criteria.  Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (finding no error in ALJ's failure to explicitly state that the impairments were not contained in the listings; ALJ's reaching steps four and five implicitly found that appellant did not meet any of the listings); Prince v. Comm'r, Soc. Sec. Admin., 551 F. App'x 967, 969 (11th Cir. 2014) (unpublished)

Moreover, the ALJ discussed the medical evidence concerning Plaintiff's degenerative disc disease and radiculopathy in detail in the decision, and thus fully considered all the records that might have shown

Plaintiff's impairments met or equaled Listing 1.04A.  Contrary to Plaintiff's

contention that the ALJ should have obtained an updated medical opinion

regarding listing equivalency, "the ALJ is not required to seek the

independent testimony of a medical expert where the record is sufficient to

determine whether the claimant is disabled" and the record is sufficiently

developed to allow the ALJ to make a full and fair decision.  Wilson v.

Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999); Prince, 551 F. App'x at 972.

The medical record in this case was fully developed and was

sufficient to allow the ALJ to make a full and fair decision concerning

whether Plaintiff's impairments meet or medically equal Listing 1.04A.

Further, substantial evidence in the record supports the decision of the ALJ

that Plaintiff's severe impairments, either singly or in combination, do not

meet or medically equal Listing 1.04A.

### B.  The ALJ's consideration of opinions of the examining, treating, and consultative medical personnel.

Plaintiff next contends that the ALJ reversibly erred in several

respects: (1) failing to accord any weight to the examining physicians

Michael Greene, D.O., anesthesiologist Stephen D. Lucas, M.D., and

orthopedic surgeon Robert Decker, M.D.; (2) according improper and

contradictory weight to the opinions of the State Agency consultative

examiner Sultan Ahmed, M.D., and according little weight to treating

physician Marlow Hernandez, M.D.; and (3) finding Physician Assistants Kathryn Fitzgerald and Amy Kirby to be non-acceptable medical sources. ECF No. 13 at 10-17.

The ALJ gave little weight to the opinion of Dr. Hernandez because it was not consistent with the bulk of the treatment records and the rather conservative medical treatment. Tr. 25. Although the ALJ also states that Dr. Hernandez only saw Plaintiff twice, the records indicate he saw Plaintiff on March 12, March 13, March 19, and March 24, 2014. Tr. 281-89.

Office notes from Plaintiff's examination by Dr. Hernandez on March 12, 2014, indicate that Plaintiff reported back pain, but he "[a]mbulates without difficulty." Tr. 281, 283. Restriction in flexion was noted along with paravertebral tenderness. Tr. 283. Plaintiff saw Dr. Hernandez the next day in a follow-up visit, with office notes stating, "He needs paperwork filled out for disability." Tr. 285. Although vital signs were taken, no notes as to a physical examination appear in the record for that date. A note by K. Marshall PA-C states, "Filled out paperwork-pending Dr. Hernandez approval." Tr. 286. Notes from a March 19, 2014, follow-up visit physical examination state that Plaintiff ambulates without difficulty, and there were no gross sensory or motor deficits. Tr. 289. Plaintiff's disability paperwork was "completed" and pain medication was to be continued. *Id.* Although

the record from March 19, 2014, has a reference on the bottom of the last page to March 24, 2014, there are no medical records for any visit or examination by Dr. Hernandez for that date.

On March 19, 2014, Dr. Hernandez filled out a residual functional capacity form indicating that he found Plaintiff's lumbar and cervical disc disorders and his "Kyphoscoliosis" expected to last one year and prevent him from standing and sitting upright for six to eight hours a day.  Tr. 274-75.  Dr. Hernandez opined that Plaintiff could stand for ten minutes, walk nonstop for 20 minutes, and is required to lie down during the day.  Tr. 275-76.  He opined that Plaintiff could rarely reach up or down or pull, and could lift and carry less than 5 pounds.  Tr. 276-77.  When asked on the form if there was work other than Plaintiff's former work that he could do, Dr. Hernandez answered "possibly."  Tr. 278.  On September 24, 2014, Dr. Hernandez provided a letter opinion that Plaintiff has been his patient "since March" and that due to his severe back pain "he is unable to work" and requests that he be placed on "temporary disability until he is able to get proper pain management" or treatment.  Tr. 311.  The medical record does not contain any examination or treatment notes by Dr. Hernandez from March 24, 2014, to September 24, 2014.

Good cause to refuse to give a treating physician's assessment controlling weight exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  Fernandez v. Comm'r of Soc. Sec., 646 F. App'x 789, 791 (11th Cir. 2016) (unpublished); Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  "When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the relevant medical issues; and (6) other factors which tend to support or contradict the opinion."  Fernandez, 646 F. App'x at 791; Gainous v. Astrue, 402 F. App'x 472, 474 (11th Cir. 2010) (unpublished); 20 C.F.R. § 404.1527(c)(2).

Although Dr. Hernandez was a treating physician, the ALJ provided supported reasons for discounting his opinion.  Dr. Hernandez's RFC opinions concerning Plaintiff's ability to work and his limitations were not supported by his medical records and examination notes and were wholly conclusory.  See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160

(11th Cir. 2004).  Plaintiff's diagnoses on the forms do not establish disability or a work-related limitation.  *See* Davis v. Barnhart, 153 F. App'x 569, 572 (11th Cir. 2005) (unpublished); Wind v. Barnhart, 133 F. App'x 684, 690 (11th Cir. 2005) (unpublished).  Plaintiff must show the effect of the impairment on his ability to work.  *Id.*  Thus, Dr. Hernandez's opinions concerning Plaintiff's ability to work or his work-related limitations cannot be supported solely by Plaintiff's diagnoses or subjective complaints of pain.  *See* Crawford, 363 F.3d at 1159; Lacina v. Comm'r, Soc. Sec. Admin., 606 F. App'x 520, 528 (11th Cir. 2015) (unpublished).

Moreover, Dr. Hernandez's records document only two physical examinations, neither of which provides a basis to conclude that Plaintiff could not sit, stand, walk, lift, carry, or pull.[12]  At most, the notes indicate that although Plaintiff was diagnosed with cervical and lumbar spinal disorders which cause him pain, he was ambulating normally.  It is not error to reject a treating physician's assessment of work-related limitations that does not "reflect the longitudinal history of impairment, treatment, and recovery" and is not consistent with other medical evidence.  *See* Lawton v. Comm'r of Soc. Sec., 431 F. App'x 830, 833 (11th Cir. 2011) (unpublished).

---

[12] Dr. Hernandez provided his residual functional capacity form on March 19, 2014, which was after only two physical examinations.  No additional examinations preceded the opinion Dr. Hernandez provided on September 24, 2014.

Two examinations in the course of eight days do not provide a meaningful longitudinal perspective.

The two opinions provided by Dr. Hernandez note that Plaintiff might "possibly" be able to work and that he should be considered "temporarily disabled" until he obtains the sufficient pain management. These opinions are at best equivocal. Dr. Hernandez's opinions are also not supported by his own records or the medical records of other professionals who treated and examined Plaintiff. Further, the question of whether Plaintiff is disabled is reserved to the Commissioner. Bell, 796 F.2d at 1353-54; Lacina, 606 F. App'x at 528; 20 C.F.R. § 404.1527(d)(1). For all these reasons, the ALJ did not reversibly err in giving Dr. Hernandez's opinions little weight.

Plaintiff also contends that the ALJ reversibly erred in the weights given to portions of Dr. Ahmed's medical records and his opinions. Plaintiff argues that the ALJ gave both great weight to the examination results of Dr. Ahmed's Consultative Examination report but little weight to the RFC and medical opinion results of the same report. ECF No. 13 at 14.

On March 3, 2014, Plaintiff was given a consultative examination by Sultan Ahmed, M.D. Tr. 246-48. The physical examination notes indicate that Plaintiff had paraspinal tenderness in his lower back that restricted his range of motion, as well as tenderness and restricted range of motion in his

right shoulder.  Tr. 247.  The muscles were found to be normal with no atrophy, and notes indicate that Plaintiff "does not use any assistive device."  *Id.*  Plaintiff's sensory system was reported as normal, with Plaintiff being "able to supine and seated straight leg raising test normally." *Id.*  His gait was reported as normal.  *Id.*  Dr. Ahmed concluded that "the patient has functional limitations on a daily basis due to chronic pain in the lower back and right shoulder" and needs further evaluation and management.  Tr. 248.

Concerning Dr. Ahmed's report, the ALJ stated, "As for the generalized opinion given by the consultative examiner . . .  I give this little weight as this is too vague.  While he notes that limitations should be given, no specific ones are noted.  Regardless, I have considered the exam findings and give[] those relatively great weight when compared to the overall medical evidence as those findings are consistent."  Tr. 25.  Plaintiff contends that by giving relatively great weight to examination findings but giving only little weight to the opinion that Plaintiff has functional limitations for daily activities due to chronic back and shoulder pain the ALJ was engaging in improper "cherry picking."  ECF No. 13 at 15.  Plaintiff cites Dicks v. Colvin, No. 3:15-cv-934-J-MCR, 2016 WL 4927637 (M.D. Fla. Sept. 16, 2016), which stated, "[I]t is clear than an ALJ is obligated to

consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Id.* at *4 (quoting <u>Goble v. Astrue</u>, 385 F. App'x 588, 593 (7th Cir. 2010)).  However, the ALJ did not cherry pick the examination findings to support the conclusion of non-disability.  The ALJ simply noted that the examination findings were consistent with the overall medical evidence.  Further, the ALJ did consider all the relevant medical evidence and explained his assignment of little weight to Dr. Ahmed's conclusion as "generalized" and failing to cite specific limitations.  Tr. 21, 25.

In reaching the RFC determination in this case, the ALJ recognized that Plaintiff's impairments imposed some limitations.  The ALJ found that Plaintiff was limited in walking to and from a work station with an assistive device, even though none was shown to be specifically prescribed.  He was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  He was limited to occasional overhead reaching and should not have concentrated exposure to vibrations.  The ALJ limited Plaintiff to simple tasks.  These limitations would also apply in Plaintiff's daily activities and thus encompass Dr. Ahmed's generalized opinion that Plaintiff's impairments cause limitations in his activities of daily living.  Plaintiff has

not demonstrated harmful error in the ALJ's consideration of or assignment of weight to Dr. Ahmed's findings and opinions.

Plaintiff also argues that the ALJ reversibly erred by failing to accord any weight to examining physicians Michael Greene, D.O., anesthesiologist Stephen Lucas, M.D., and orthopedic surgeon Robert Decker, M.D. ECF No. 13 at 10. He contends the ALJ failed to specify what weight, if any, he assigned to the medical opinions of these physicians. *Id.*

The ALJ discusses in the decision that Dr. Greene saw Plaintiff in October 2015 for leg, back, and hip pain. Tr. 23 (citing record at Tr. 409). That examination revealed slowed gait with tenderness of the lumbar paraspinal musculature and large midline thoracic. Tr. 23 (citing record at Tr. 410). Seated straight leg raising was positive. *Id.* Plaintiff was neurologically intact. *Id.* The ALJ discussed Dr. Greene's records showing that after Plaintiff received an epidural steroid injection, he was again seen by Dr. Greene on December 28, 2015, for a follow-up examination which disclosed that the spine injection did not provide much benefit but that pain medication did provide some improvement, although the record is ambiguous on this point. Tr. 23 (citing record at Tr. 442). The ALJ noted that the physical examination findings remained generally unchanged and Plaintiff was given pain medication refills. Tr. 24 (citing record at Tr. 444).

The ALJ also discussed Dr. Greene's follow visits with Plaintiff in January and February 2016.  Tr. 24.

The ALJ also discusses treatment notes of Dr. Lucas at UF Pain and Spine Center.  Tr. 23.  Records indicate Plaintiff saw several different physicians at the Pain and Spine Center in 2015, in January, February, May, and August.  Tr. 412-429.[13]  Plaintiff saw Dr. Lucas on August 31, 2015, and the examination disclosed normal and symmetric reflexes, normal gait, 5/5 strength in all tested muscle groups and no muscle wasting or atrophy, no abnormalities in the cervical exam, tenderness in the lumbar facet joints and facet loading with extension and lateral rotation.  Tr. 414.  Plaintiff was negative on the straight leg raising test on the left.  He had tenderness to palpation over the sacroiliac joint.  *Id.*  Dr. Lucas diagnosed Plaintiff with lumbar spondylosis, thoracic spondylosis, and impression notes indicate Plaintiff "opted for medication management for now." Tr. 415.  The ALJ discussed Dr. Lucas's records and the results of Plaintiff's examinations at the UF Pain & Spine Center, and noted that the physical examination findings were essentially unchanged.  Tr. 23.

---

[13] January 23, 2015, and February 11, 2015, and May 29, 2015, progress notes are signed by Galaxy Li, M.D.  Tr. 429.  August 31, 2015, treatment notes are signed by Dr. Lucas.

The ALJ also discussed Plaintiff's treatment by Dr. Decker at Shands Orthopedic Surgery.  Tr. 22.  The ALJ noted that Dr. Decker's examination revealed spinal tenderness throughout the thoracolumbar spine with decreased cervical range of motion.  *Id.*  Muscle strength and reflexes were intact and Plaintiff exhibited normal gait.  Tr. 22 (citing records at Tr. 347). The ALJ noted that Dr. Decker found Harrington rods in Plaintiff's spinal-rays, which showed mild degenerative changes.  Tr. 22 (citing record at 348).  Dr. Decker recommended rest, activity modification (without specification), NSAIDS, stretching/exercise and prescription for physical therapy.  Tr. 23 (citing record at Tr. 348).

Plaintiff argues that these physicians' treatment notes qualify as formal medical opinions that determined the nature and severity of Plaintiff's impairments for which the ALJ was required to accord weight. ECF No. 13 at 11-12.  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).  Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or

considerable weight.' " Winschel, 631 F.3d at 1178-79 (quoting Lewis, 125 F.3d at 1440).  *See also* 20 C.F.R. §§ 404.1527(d)(1)-(2).  The ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Id.*  The ALJ must "state with at least some measure of clarity the grounds for his decision."  Winschel, 631 F.3d at 1179.

Even though the ALJ did not specifically state the weight to be given to the findings of Dr. Greene, Dr. Lucas, and Dr. Decker, any error is harmless because the ALJ considered all this evidence, and the opinions of nature and severity of Plaintiff's impairment reflected in these records were consistent with the medical record as a whole and with the ALJ's determination of the RFC.  The ALJ's comprehensive discussion of the medical record leaves no doubt about the rationale and evidence relied on by the ALJ in the decision.  The failure to expressly assign weight as to these three physicians does not impair this Court's ability to determine if the ultimate decision of the ALJ is rational and supported by substantial evidence.  *See* Colon v. Colvin, 660 F. App'x 867, 870 (11th Cir. 2016) (unpublished) (holding that ALJ's failure to state the weight given to certain doctors' findings was harmless because the opinions were consistent with the ALJ's findings as to the impairments and limitations and did not leave the reviewing court "pondering why the ALJ made the decision he made.");

<u>Hunter v. Comm'r of Soc. Sec.</u>, 609 F. App'x 555, 558 (11th Cir. 2015) (unpublished) (holding failure to consider opinions of two doctors harmless where the doctors did not offer opinions as to how claimant's medical condition would impact his ability to perform past relevant work and did not affect the ALJ's ultimate determination).

In his last contention in this section, Plaintiff contends that the ALJ reversibly erred in finding that the physician assistants that Plaintiff saw were not acceptable medical sources.  ECF No. 13 at 15.  He argues that the opinions of Kathryn Fitzgerald, PA-C, and Amy Kirby, PA-C, were given "little weight" by the ALJ because he found that, as physician assistants, they were non-acceptable medical sources.  ECF No. 13 at 15-16.  Plaintiff cites agency rules changes in 2017 that defines acceptable medical source to include "Licensed Physician Assistant for impairments within his or her licensed scope of practice (only with respect to claims filed . . . on or after March 27, 2017)."  20 C.F.R. § 404.1502(8) (2017)

By its express terms, the addition of physician assistants to the definition of acceptable medical sources is not applicable to this case, which was filed before March 27, 2017.  Thus, the ALJ did not err in concluding that the physician assistants were non-acceptable medical sources.  *See* Tr. 25.  Plaintiff argues that, at a minimum, the opinions of

the two physician assistants in this case should have been evaluated by the regulatory factors applicable to non-acceptable medical sources, which include the length of the treatment relationship, nature and extent of the treatment relationship, consistency of the opinion with the record as whole, and the area of expertise or specialty of the treating source. ECF No. 13 at 17. The ALJ did consider and discuss their opinions.

The ALJ gave little weight to the opinion of PA-C Fitzgerald that Plaintiff is disabled, explaining that the evidence shows conservative care with no surgical recommendations, which does not support a finding of disability. Tr. 25 (citing record at Tr. 257). The ALJ also considered the opinion of PA-C Kirby at Palms Medical Group and gave it little weight. Tr. 430 (citing record at 430). That opinion, in the form of a letter dated March 2, 2016, states that Kirby reviewed Plaintiff's medical records and states, "I do feel that you are disabled" due to chronic pain from neck down spine to lower back that has not been relieved by injections or medication. The opinion notes that Plaintiff's past MRI shows degenerative disc disease, bilateral foraminal narrowing with herniated disc, L1-2 large herniation with facet arthropathy and osteophyte causing central canal narrowing and foraminal narrowing. Tr. 430. She states that there is large

disc herniation at L5-S1 with moderate canal stenosis and moderate to severe right greater than left neural foraminal narrowing. *Id.*

The ALJ concluded that Kirby is a non-acceptable medical source and her opinion is entitled to little weight because she is not even the treating examiner provider, her opinion is not supported by the overall medical evidence, and her opinion is not consistent with the rather conservative treatment records that do support some limitations more consistent with reduced range of sedentary jobs, when viewed in conjunction with objective diagnostic testing showing some increase in degenerative changes. Tr. 25. Moreover, an opinion that a claimant is disabled is matter reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); SSR 96-5p.

Plaintiff has failed to show non-harmless error in the ALJ's consideration of the opinions of Doctors Ahmed, Hernandez, Greene, Lucas, and Decker, and physician assistants Fitzgerald and Kirby. Moreover, a complete review of the record as a whole supports the conclusion that the findings of the ALJ are based upon substantial evidence in the record.

## C. Testimony of the vocational expert.

In his last challenge to the decision, Plaintiff contends that the ALJ improperly relied on the testimony of the vocational expert to find Plaintiff could perform other work and was not disabled.  He argues that the hypothetical question failed to include the limitation that he must use an assistive device for all ambulation, which would significantly erode the occupational base.  ECF No. 13 at 18.  He also contends that the vocational expert opined, and the ALJ found, that Plaintiff could perform three jobs that include occasional overhead reaching and simple tasks, but the jobs listed require frequent reaching and the ability to apply common sense to carry out instructions furnished in written, oral or standardized situations.[14]  *Id.*  Relying on Skilltran/Job Browser Pro, Plaintiff further contends that each of the three jobs testified to by the vocational expert

---

[14] Plaintiff does not expound further on this contention that a limitation of simple tasks conflicts with the reasoning level of the jobs cited.  Nor has Plaintiff cited any binding authority to support this claim of error.  However, no error is present.  *See* Chambers v. Colvin, No. 1:15cv56-MP/CAS, 2015 WL 10436110, at *21 (N.D. Fla. Nov. 24, 2015), report and recommendation adopted, No. 1:15cv00056-MP/CAS, 2016 WL 890576 (N.D. Fla. Mar. 8, 2016) (even level three reasoning not inconsistent with plaintiff's ability to perform only simple tasks), aff'd sub nom. Chambers v. Comm'r of Soc. Sec., 662 F. App'x 869 (11th Cir. 2016) (unpublished); *see also* Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 661 (11th Cir. 2007) (unpublished) (no remand where VE identified even reasoning level three jobs for a plaintiff who could do only simple, routine, and repetitive work); Terry v. Astrue, 580 F.3d 471 (7th Cir. 2009); Renfrow v. Astrue, 496 F.3d 918 (8th Cir. 2007) (reasoning level three not inconsistent with plaintiff's inability to do complex work)).  Even assuming a conflict existed between the DOT and the vocational expert's testimony, the expert's testimony outweighs the DOT.  *See* Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999).

have fewer available jobs in the national economy than that testified to by the vocational expert.  *Id.*

The ALJ found that Plaintiff's ability to perform a full range of sedentary work was impeded by additional limitations, which were ultimately included in the RFC.  Tr. 27.  The ALJ asked the vocational expert whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and specified limitations. Tr. 27; Tr. 52-54.  The vocational expert testified to three jobs, described in the DOT, that he opined Plaintiff could still perform.

When a claimant's vocational factors do not fully fit the criteria of a particular Medical-Vocational Guideline (the Grids), it is appropriate for the ALJ to elicit testimony from a vocational expert, as the ALJ did in this case. The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform.  However, " '[e]xclusive reliance on the grids is not appropriate <u>either</u> when [the] claimant is unable to perform a full range of work at a given residual functional level <u>or</u> when a claimant has non-exertional impairments that significantly limit basic work skills.' "  <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1242 (11th Cir. 2004) (quoting <u>Francis v. Heckler</u>,

749 F.2d 1562, 1566 (11th Cir. 1985) (emphasis added); *see also* Jones, 190 F.3d at 1229; Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). Thus, in this case it was proper for the ALJ to rely on the testimony of a vocational expert.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227.  *See also* Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).  The ALJ is not required, however, to include findings in the hypothetical that the ALJ has properly rejected as unsupported.  *See* Crawford, 363 F.3d at 1158; McSwain v. Bowen, 814 F.2d 617, 620 n.1 (11th Cir. 1987).  In this case, the ALJ posed a hypothetical that encompassed all the limitations that the ALJ found supported by the record.  The ALJ included use of an assistive device to ambulate to and from the workplace even though the record did expressly require a medically prescribed assistive device for ambulation.[15] Many of the physical examinations in the record note that Plaintiff's gait was normal and that he walked without an assistive device.  The ALJ could not find in the record any medically prescribed assistive device.  Tr. 26.

---

[15] One reference appears in records of Palms Medical Group signed by Kirsty Freshwater, ARNP, dated June 11, 2015, to a rolling walker but does not indicate that the walker is required for all ambulation.  *See* Tr. 371.

Thus, the ALJ was not required to pose a hypothetical based on constant use of an assistive device.

As to the reaching limitation, the ALJ found based on the record that Plaintiff had the ability to occasionally reach overhead and included this limitation in the RFC.  Plaintiff argues that the three representative occupations testified to by the vocational expert all require frequent reaching and that this conflict requires remand.  Such a potential conflict has been held in other circuits to require remand where the inconsistency is not resolved by evidence from the vocational expert.  *See, e.g.*, Moore v. Colvin, 769 F.3d 987, 989 (8th Cir. 2014); Hernandez v Colvin, No. SACV 15-00475-KES, 2016 WL 2350091, at *3 (C.D. Cal. May 4, 2016).

In this case, the vocational expert testified that Plaintiff could perform three representative sedentary jobs that, based on the stated hypothetical, would require no more than occasional overhead reaching.  Tr. 52-54.  When asked if there was any conflict between her testimony and the Dictionary of Occupational Titles, the vocational expert testified, "Your honor, the overhead reaching, the handheld device, the off-task, and the absenteeism are all based on my special training and experience.  It's not addressed by the DOT."  Tr. 55-56.  When counsel for Plaintiff questioned the vocational expert, no questions were directed to the potential conflict

between the occasional overhead reaching limitation and the frequent

reaching limitation in the three representative job descriptions contained in

the Dictionary of Occupational Titles. *See* Tr. 56.

> Social Security Ruling 00-4p provides in pertinent part:
>
> Reasonable explanations for such conflicts, which may provide
> a basis for relying on the evidence from the VE or VS, rather
> than the DOT information, include, but are not limited to the
> following:
> . . . .
> The DOT lists maximum requirements of occupations as
> generally performed, not the range of requirements of a
> particular job as it is performed in specific settings. A VE, VS,
> or other reliable source of occupational information may be able
> to provide more specific information about jobs or occupations
> than the DOT.

SSR 00-4p, 2000 WL 1898704, at *3 (eff. Dec. 4, 2000). In this case, the

hypothetical identified a more particular type of reaching—overhead—and

the vocational expert formed her opinion based on this more specific

information. The vocational expert considered not the maximum

requirement of the occupational listing—frequent reaching—but the lesser

requirement of occasional overhead reaching. *See, e.g.*, Turner v.

Berryhill, No. 3:15cv498/EMT, 2017 WL 1197819, at *6-7 (N.D. Fla. Mar.

30, 2017).

The Eleventh Circuit held in Jones v. Apfel, 190 F.3d 1224 (11th Cir.

1999), that when there is a conflict between the VE's testimony and the

DOT, "the VE's testimony 'trumps' the DOT . . . because the DOT 'is not

the sole source of admissible information concerning jobs.' " *Id.* at 1229-30

(quoting Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994)). The Eleventh

Circuit explained:

> The DOT itself states that it is not comprehensive.  It provides
> occupational information on jobs in the national economy, and it
> instructs "DOT users demanding specific job requirements [to]
> supplement th[e] data with local information detailing jobs within
> their community.". . .  Additionally, the Code of Federal
> Regulations states that the SSA will take administrative notice
> of reliable job information available from various governmental
> and other publications, such as the DOT.  *See* 20 C.F.R.
> § 404.1566(d)(1).  By this wording, the SSA itself does not
> consider the DOT dispositive.  As noted in the DOT, the ALJ
> should supplement the DOT data with local information
> detailing jobs in the regional community.  The VE provides this
> vital information. . . .  As such, we conclude that the VE's
> testimony is crucial to an ALJ's determination at step 5 of the
> sequential evaluation process.  Due to the significance of the
> VE's testimony, we. . . hold that an ALJ may rely solely on the
> VE's testimony.

Jones, 190 F.3d at 1230.

The holding that the VE's testimony trumps the DOT has been

consistently upheld.  *See* Mabrey v. Acting Comm'r of Soc. Sec. Admin., ---

F. App'x ----, 2018 WL 679390, at *3 (11th Cir. Feb. 2, 2018) (unpublished)

(citing Jones and holding that "[w]here there is conflict between the

Dictionary of Occupational Titles ("DOT") and a vocational expert's

testimony, an ALJ may rely solely on a vocational expert's testimony");

Leigh v. Comm'r of Social Sec., 496 F. App'x. 973, 974-75 (11th Cir. 2012)

(unpublished) (same); Hurtado v. Comm'r of Soc. Sec., 425 F. App'x. 793,

796 (11th Cir. 2011) (unpublished) (stating "[e]ven assuming that an

inconsistency existed between the VE's testimony and the DOT, the ALJ

did not err by relying on the VE's testimony because it 'trump[ed]' any

inconsistent provisions of the DOT"); Miller, 246 F. App'x. at 662

(unpublished) ("Our precedent establishes that the testimony of a [VE]

'trumps' an inconsistent provision of the DOT in this Circuit.").  Thus, to the

extent the vocational expert's testimony conflicts with the DOT on the issue

of reaching, the ALJ may properly rely on the testimony especially where,

as here, the vocational expert testified that her testimony on the overheard

reaching limitation was based on her "special training and experience."

Tr. 55-56.

Social Security Ruling 00-4p requires that "[t]he adjudicator will

explain in the determination or decision how he or she resolved the conflict.

The adjudicator must explain the resolution of the conflict irrespective of

how the conflict was identified."  However, social security rulings are not

binding on the court.[16]  Even so, it should be noted that in this case, the

---

[16] See Jones v. Comm'r of Soc. Sec., 423 F. App'x 936, 939 n.4 (11th Cir. 2011)
(unpublished) ("To the extent SSR 00-4p conflicts with [Jones v. Apfel, 190 F.3d 1224
(11th Cir. 1999)], we are bound by Jones."); see also Terwilliger v. Colvin, No.
1:12cv129-MP/GRJ, 2013 WL 2251563, at *12 (N.D. Fla. May 21, 2013) ("Although

ALJ explained the resolution of the conflict between the testimony of the vocational expert and the DOT as to the sit/stand option and use of an assistive device.  The ALJ did not mention the conflict as to frequent reaching versus occasional overhead reaching, which the vocational expert also addressed at the hearing.  *See* Tr. 27, 55-56.  Plaintiff, however, has not shown that this omission constitutes non-harmless error.

First, the ALJ's reliance solely on the testimony of the vocational expert, without further resolution of any conflicts between the testimony and the DOT, was not error.  As noted above, the Eleventh Circuit has made clear that where the vocational expert opined that the ALJ's hypothetical person could perform certain jobs, the ALJ was permitted to base his findings about those jobs exclusively on the VE's testimony, irrespective of any inconsistency with the DOT, and was not required to seek further explanation.  Jones, 423 F. App'x at 939; *see also* Miller, 246 F. App'x at 661 (reiterating that "[i]f there is a conflict between the DOT and the jobs identified by a vocational expert in response to the hypothetical question, the testimony of the vocational expert 'trumps' the DOT.").  Thus, the ALJ properly relied on the vocational expert's testimony in this case.

---

SSR 00-4p was promulgated after Jones was decided, it does not undo the Jones rule.").

Second, even if error were shown, the court can disregard any errors or defects that "do not affect any party's substantial rights." Fed. R. Civ. P. 61 (harmless error); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in the context of a social security case). When an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand. *See* Diorio, *supra.* In this case, the same explanation that the ALJ gave as to the conflict concerning the sit/stand option and the assistive device limitation would apply to the overheard reaching limitation because the vocational expert's testimony was the same as to all three issues—she was relying on her special training and experience. The ALJ's failure to include mention of the inclusion of an occasional overhead reaching limitation when discussing the vocational expert's explanation concerning the sit/stand option and the assistive device limitation has not been shown to have affected Plaintiff's substantial rights or that it would have altered the ALJ's decision. The medical record and testimony at the hearing contain substantial evidence to support the inclusion of an occasional overhead reaching limitation in the RFC and to support the conclusion that the three sedentary jobs cited by the expert were jobs Plaintiff could perform. Even though the ALJ did not

expressly explain the apparent conflict between the occasional overhead reaching limitation, the ALJ would have nevertheless reached the same decision based on the vocational expert's testimony and the ALJ's discussion of the other two limitations.  *See* Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003) (stating that the harmless error inquiry involves determining "whether the ALJ would have reached the same decision denying benefits, even if he had followed the proper procedure").

It should also be noted that counsel did not deem the ALJ's hypothetical question sufficiently deficient, or the vocational expert's explanation sufficiently lacking, to warrant further development at the hearing.  *See* Smith v. Astrue, No. 5:09cv158/RS/EMT, 2010 WL 3749209, at *15 (N.D. Fla. Aug. 25, 2010), report and recommendation adopted, No. 5:09cv158, 2010 WL 3749193 (N.D. Fla. Sept. 17, 2010) (citing White v. Astrue, 240 F. App'x. 632, 634 (5th Cir. 2007) (citing Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000) (stating "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing")).  The ALJ asked the vocational expert about the potential

conflicts between her testimony and the DOT, and the expert answered

that question—including an explanation as to the occasional overheard

reaching limitation.  The ALJ properly relied on the testimony of the

vocational expert and no harmful error has been shown.

Finally, Plaintiff contends that the number of positions available in the

national economy for the three representative jobs identified by the

vocational expert, and found by the ALJ, are substantially fewer than the

numbers testified to by the expert.  ECF No. 13 at 18.  Citing the

Skilltran/Job Browser Pro software, Plaintiff argues that there are only 772

order clerk positions available, 1,498 charge account clerk positions

available, and 44,775 document preparer jobs available.

At the hearing, counsel did not ask the vocational expert where the

national job numbers were derived from or upon what the numbers were

based.  As to what constitutes a "significant number" of jobs in the national

economy, the Eleventh Circuit has not fashioned a bright line rule.  As the

Court has explained:

> This Court has never held that a minimum numerical count of
> jobs must be identified in order to constitute work that "exists in
> significant numbers" under the statute and regulations. We
> have concluded, however, that the "appropriate focus under the
> regulation is the national economy," not the local economy in
> which the claimant lives.  Allen v. Bowen, 816 F.2d 600, 603
> (11th Cir. 1987).

> In <u>Allen v. Bowen</u>, this Court upheld the ALJ's finding that work existed in significant numbers were the VE testified that there were 174 small appliance repairman positions in the area of Georgia where the claimant lived.  The VE also testified that there were 1,600 general appliance repair jobs in the entire state, and 80,000 such jobs nationally, of which "[a] considerable number . . . [were] in the small appliance field."  *Id.* at 602.  This Court stressed in <u>Allen</u> that, because an ALJ's finding as to the existence of a sufficient quantity of jobs is a finding of fact reviewed under the substantial evidence standard, we could not reweigh the evidence or "substitute our judgment for that of the Secretary."  *Id.*

<u>Atha v. Comm'r, Soc. Sec. Admin.</u>, 616 F. App'x 931, 934 (11th Cir. 2015) (unpublished).

Even if Plaintiff is correct that there are fewer jobs available in the national economy than the numbers testified to by the vocational expert, Plaintiff asserts that there are 44,775 document preparer jobs available rather than 104,000.  By any standard, 44,775 is a significant number of jobs.  Thus, any error in the number of jobs available in the national economy for the other two occupations of order clerk and charge account clerk is harmless because the ALJ continues to have substantial evidence on which to conclude that Plaintiff is not disabled.  *See, e.g.*, <u>Burgin v. Comm'r of Soc. Sec.</u>, 420 F. App'x. 901, 903 (11th Cir. 2011) (unpublished) (applying the harmless error doctrine to social security cases); <u>Bohn v. Astrue</u>, No. 8:12cv354-T-TGW, 2013 WL 494059, at *6 (M.D. Fla. Feb. 7, 2013) ("[E]ven if there had been an error with respect to [certain jobs], that

error would be harmless since [one] job alone supports the law judge's finding that there are jobs in significant numbers in the national economy that the plaintiff can perform."); <u>Tellier v. Colvin</u>, No. 3:15cv663-J/JBT, 2016 WL 7438048, at *3 (M.D. Fla. Feb. 19, 2016).  As the Court stressed in <u>Allen</u>, because an ALJ's finding as to the existence of a sufficient quantity of jobs is a finding of fact reviewed under the substantial evidence standard, the Court could not reweigh the evidence or "substitute [its] judgment for that of the Secretary."  <u>Atha</u>, 616 F. App'x at 934 (quoting <u>Allen</u>, 816 F.2d at 603).

Plaintiff has not demonstrated non-harmless error in the ALJ's reliance on the testimony of the vocational expert to find there are representative jobs available in the national economy that Plaintiff can perform and that Plaintiff is, therefore, not disabled.

### V. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.  Having considered the case on the merits after a review of the entire record, it is respectfully recommended that the motion for summary judgment, ECF No. 13, should be denied and, pursuant to 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff Raney's

application for Social Security benefits should be **AFFIRMED** and

Judgement entered for the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on February 13, 2018.


**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.**